[42 NYS3d 351]

In the Matter of John A. Reno, an Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

Second Department, December 14, 2016

## APPEARANCES OF COUNSEL

*Mitchell T. Borkowsky*, Hauppauge (*Daniel M. Mitola* of counsel), for petitioner.

*John A. Reno*, Deer Park, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated May 12, 2015, containing a single charge of professional misconduct. After a prehearing conference on October 5, 2015, and a hearing on November 16, 2015, the Special Referee declined to sustain the charge. The Grievance Committee moves to disaffirm the Special Referee's report, to sustain the charge, and to impose such discipline upon the respondent as the Court deems just and appropriate. The respondent has filed an affirmation opposing the motion to disaffirm.

Based on the evidence adduced, we find that the Special Referee improperly declined to sustain the charge.

Charge one alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), as follows: The respondent was an experienced real estate practitioner who regularly represented buyers and sellers in residential real estate transactions. On or about February 23, 2007, the respondent undertook to assist Idabelle Ward in the purchase of a single-family home located in North Babylon, New York (hereinafter the North Babylon property). The respondent knew that Ward owned several

properties and regularly purchased and sold real estate for investment purposes. The respondent had represented Ward's legal interests in at least four prior real estate transactions. At all relevant times prior to February 2007, the owner of the North Babylon property was Dorothy Johnson, as surviving tenant by the entirety. On or about February 23, 2007, the respondent knew or should have known that Johnson was 80 years old and a widow, and required the assistance of a home health care aide. At the time of the closing, Ward had only recently become employed as Johnson's home health care aide.

On or about February 23, 2007, the respondent was advised by Ward that the sale price agreed to between her and Johnson for the North Babylon property was $100,000, a price the respondent knew or should have known was well below fair market value. The respondent was further advised by Ward that she would permit Johnson to continue to occupy the premises and would continue to provide home health care services for Johnson following the sale as further consideration for Johnson agreeing to sell the North Babylon property to her for the sum of $100,000.

The respondent knew that his client Ward had already undertaken repairs on the North Babylon property prior to closing. The respondent did not memorialize the terms of the sale in a contract of sale. The respondent was advised by Ward that she had conducted her own investigation of title to the North Babylon property and did not desire an independent title search. At no time during the transaction was Johnson represented by independent counsel.

On or about February 24, 2007, the respondent met with Ward and Johnson to close on the North Babylon property. The respondent prepared a bargain and sale deed with covenants against grantor's acts, and other required transfer documents, including a Combined Real Estate Transfer Tax (TP 584) and a Real Property Transfer Report (RP 5217) (hereinafter collectively the transfer documents), based on information and tax documents provided to him by Ward. The respondent entered the sale price of $100,000 on the transfer documents. At the closing, the respondent oversaw and supervised Johnson's execution of the transfer documents, and notarized Johnson's signature on the deed conveying the North Babylon property to Ward.

At the closing, the respondent failed to confirm or take any steps to ensure that Johnson received the $100,000 from Ward,

and failed to take any steps to ensure that Johnson would have any recourse against Ward in the event that Ward failed to comply with her agreed-upon post-closing obligations to permit Johnson to remain in the North Babylon property and to continue to care for Johnson. At the closing, Ward did not tender $100,000 to Johnson.

Sometime between February 24, 2007 and June 27, 2007, Johnson had an accident in which she injured her hip and was hospitalized. On June 27, 2007, Johnson died.

By summons dated August 7, 2008, Johnson's daughter, Robin Johnson, commenced an action in the Supreme Court, Suffolk County, under index No. 031670/2008, against Ward and the respondent to have the deed set aside and declared null and void. On May 1, 2013, Robin Johnson, Ward, and the respondent stipulated on the record that the North Babylon property would be sold and the proceeds divided between Ward and Robin Johnson.

The facts in this case were largely uncontested. The parties, however, differed widely with regard to the respondent's obligations, if any, to the seller. The hearing evidence revealed, inter alia, that shortly before the subject closing, the buyer approached the respondent and requested that he represent her in a real estate transaction. The buyer sought the respondent's assistance in preparing a deed *only*. The parties had agreed, according to the buyer, to a sale price of $100,000. The sale price of $100,000 was below market value for such a residential home due to the agreed terms of the sale, which provided that the seller would be permitted to continue to reside in the home, and the buyer would continue to care for the seller, until the seller's death. These terms, which were atypical, were never memorialized in any sort of writing, and no request to do so was made by the buyer or the seller. Since the buyer had already conducted a title search on the property and there were no contingencies, e.g., procurement of a mortgage, the respondent did not see a need for a contract of sale and agreed to conduct the closing. At the closing, which took place in the seller's home (the North Babylon property), the respondent introduced himself to the seller as the buyer's attorney. The seller, an 80-year old woman, was weak and infirm in appearance, but she otherwise appeared to be competent. The seller was not represented by counsel. The respondent oversaw the execution of the transfer documents and witnessed the exchange of a check, but did not view or examine the check.

The amount of the check, as it turned out, was for $10,000 only, not $100,000, the agreed-upon sale price.

The Grievance Committee contends, as alleged in the petition, that the respondent failed to confirm or take steps to ensure that the seller received the $100,000 from the buyer, and failed to take any steps to ensure that the seller would have any recourse against the buyer in the event that, post-closing, the buyer failed to permit the seller to remain in the home and failed to continue to care for her. The respondent contends that, as the attorney for the buyer, he had no such obligations, arguing that he owed the seller a duty not to discriminate against her and not to deceive her, but that he was not required to take affirmative steps intended solely to protect the seller from his client. The respondent, however, did acknowledge at the hearing that he had "some duty . . . to ensure a legitimate transaction occurred."

We have carefully considered the parties' contentions and find that, under the circumstances of this case, the respondent, at a minimum, had a duty to confirm that his client tendered the agreed consideration of $100,000, to ensure that the transaction was "legitimate." We conclude that the respondent's failure to do so is sufficient to sustain the charge that he engaged in conduct that adversely reflects on his fitness as a lawyer. Accordingly, the Grievance Committee's motion to disaffirm the Special Referee's report and to sustain the charge is granted.

In determining the appropriate measure of discipline to impose, this Court takes note of the fact that the respondent has no prior disciplinary history, that he did not profit from the transaction as he earned only a nominal fee, and that the District Attorney's Office conducted an investigation and filed no criminal charges against any party. Under the circumstances of this case, we conclude that a public censure is warranted.

ENG, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.

Ordered that the Grievance Committee's motion to disaffirm the Special Referee's report and to sustain the charge is granted; and it is further,

Ordered that the respondent, John A. Reno, is publicly censured for his professional misconduct.